IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CAMERON ROMER,** | : | Civil No. 1:20-cv-1275 |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **MHM HEALTH PROFESSIONALS,** | : | |
| | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

**M E M O R A N D U M**

Before the court is Defendant's Motion to Dismiss Plaintiff's Complaint. (Doc. 5.) For the reasons outlined below, the court will deny the motion.

**I.    BACKGROUND**

For the purpose of this motion, the court takes all well-pleaded facts as true and makes all reasonable inferences in favor of Plaintiff Cameron Romer ("Plaintiff" or "Cameron"). Defendant MHM Health Professionals ("Defendant" or "MHM") is a limited liability company that contracts with the Pennsylvania Department of Corrections ("DOC") to provide psychiatric services for mentally ill inmates. Plaintiff was an employee of Defendant who served in an administrative role, reviewing contracts and services provided by Defendant to ensure it was complying with its obligations. She was not licensed to practice medicine.

Around January of 2019, the DOC informed Defendant that it would soon be engaging in a new bidding process for additional contractual services. To increase

1

its odds of winning, Defendant instructed Plaintiff to acquire secret information concerning the other entities that were bidding. Plaintiff informed Defendant multiple times that she thought this was wrong and illegal, but Defendant nonetheless insisted that she do it.  Plaintiff eventually caved and agreed to acquire the information, but she also shared this information with multiple people, angering Defendant and causing it to shift blame for the bidding espionage to Plaintiff.

Around April of 2019, Plaintiff informed Defendant it was failing to comply with some of its contractual obligations to the DOC.  Specifically, Plaintiff informed Defendant it acted wrongly in providing inadequate hours and quality of treatment, understaffing medical providers, and overmedicating certain prisoners to such an extent that one soiled himself and required hospitalization. Plaintiff went further to inform Defendant that it was inaccurately recording the treatment being rendered. While one of Plaintiff's superiors investigated and ultimately agreed with Plaintiff's allegations, she chose to hide her findings and instructed Plaintiff to complete a medical report without the presence or aid of any licensed physician.  Defendant went on to make certain company-wide mandates for drug provisions during the treatment of patients and instructed Plaintiff to work with and monitor Defendant's psychiatrists to ensure they were providing proper care to DOC patients.  Plaintiff protested that Defendant was instructing her to engage in the unlicensed practice of

medicine for the purpose of hiding Defendant's fraudulent representation of its inadequately rendered care.

On October 1, 2019, Defendant terminated Plaintiff, allegedly due to, among other things, her failure to properly engage in the acquisition of bidding secrets and the practice of unlicensed medicine. On June 29, 2020, Plaintiff sued Defendant in the Court of Common Pleas in Cumberland County, alleging three causes of action. First, Plaintiff accused Defendant of violating the Pennsylvania Whistleblower Act ("PWA") by terminating her for reporting wrongdoing.[1] Second, Plaintiff alleged that Defendant wrongfully discharged her under the common law wrongful discharge doctrine, accusing Defendant of terminating her for refusing to engage in unlawful activity. Third, Plaintiff alleged Defendant violated the Medical Care Availability and Reduction of Error ("MCARE") Act.[2] On July 24, 2020, Defendant removed the case to federal court on diversity grounds. (Doc. 1.) On August 14, 2020, Defendant filed its Motion to Dismiss Plaintiff's Complaint. (Doc. 5.) Plaintiff filed a brief in opposition (Doc. 9), and Defendant replied (Doc. 10). The motion is thus ripe before the court.

---

[1] Plaintiff also includes an allegation of "waste" in the complaint, but this allegation is conclusory and not explained in her brief. As such, the court will not evaluate the argument at this time.

[2] Plaintiff has agreed to dismiss Claim 3. It will thus, at this time, be dismissed.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more

than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted).

### III. DISCUSSION

#### a. Plaintiff Has Properly Alleged a Claim Under the PWA Because Defendant Is a Public Body Under the Statute.

Under 43 P.S. § 1423(a):

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of

5

> wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

Here, Plaintiff has properly alleged that she was terminated by Defendant for complaining of wrongdoing. Defendant argues this only renders it liable under § 1423(a) if it is a public body.[3]

> 43 P.S. § 1422 defines a public body as:
>
>> All of the following:
>> (1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.
>> (1.1) The General Assembly and its agencies.
>> (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.
>> (3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.

---

[3] Defendant's argument in its original motion to dismiss Plaintiff's first claim is solely that it is not an employer under the statute. On reply, however, Defendant first raised the argument that it did not qualify as a public body, therefore justifying dismissal on this alternative ground. The line of case law and portion of the statute concerning the definition of public body are distinct from those governing the definition of an employer. This renders Defendant's argument new on reply, giving Plaintiff no opportunity to address it and rendering it improperly before the court. *See Smithkline Beecham PLC v. Teva Pharm. USA, Inc.*, No. 04-cv-215, 2007 WL 1827208, at *1 (D.N.J. June 22, 2007); *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 459 n.3 (5th Cir. 2010) ("That argument is waived, because it was not made in the plaintiffs' opening brief."). Thus, even if the substance of Defendant's argument is correct, this part of the motion will be denied on procedural grounds.

Plaintiff alleged that Defendant received payment from the DOC.  Defendant does not dispute that this constitutes money "by or through Commonwealth or political subdivision authority."[4]  Defendant, however, relies on federal district court authority holding that this would not qualify as being "funded" by the DOC.  Thus, the operative question here is whether receiving money from a public entity constitutes being "funded," therefore rendering Defendant a public body.

In interpreting a Pennsylvania statute, the court must apply Pennsylvania rules governing statutory interpretation.  *In re Trustees of Conneaut Lake Park, Inc.*, 855 F.3d 519, 523 (3d Cir. 2017).  Under Pennsylvania law, the purpose of statutory interpretation is to effectuate the intent of the legislature and give effect to every provision.  1 Pa. C.S. § 1921(a).  "In general, the best indication of legislative intent is the plain language of a statute."  *Sivick v. State Ethics Comm'n*, --- A.3d ----, 2020 WL 5823822, at *6 (Pa. Oct. 1, 2020) (internal quotations omitted).  Thus, "[w]hen the words of the statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  1 Pa.C.S. § 1921(b); *accord Riggio v. Burns*, 711 A.2d 497, 500 (Pa. Super. Ct. 1998) (*en banc*) ("Where the language of a statute is unambiguous on its face, we are bound to give effect to that language.").  "Only if the statute is ambiguous, and not explicit, do we resort to other

---

[4]  The court does not hold, as a matter of law, that money from the Pennsylvania DOC, specifically, constitutes money through the Commonwealth or subdivision authority—it simply finds such an allegation plausible at this stage of litigation.

7

means of discerning legislative intent," *Crown Castle NG East LLC v. Pa. Public Util. Comm'n*, 234 A.3d 665, 674 (Pa. 2020) (internal quotations omitted), such as the "circumstances under which [the statute] was enacted," the "consequences of a particular interpretation," the "contemporaneous legislative history," or the "[l]egislative and administrative interpretation of the statute," 1 Pa.C.S. § 1921(c).

Turning to the statute itself, the word "fund" ordinarily means "to provide the money to pay for an event, activity, or organization." *Fund*, Cambridge Dictionaries Online, https://dictionary.cambridge.org/us/dictionary/english/funded (last accessed 10/26/2020). This is the most basic definition of "fund," with "funded" simply being its past tense. Thus, the plain language of the statute renders any entity a public body if it is paid either directly by the Commonwealth or indirectly by a public entity with money that has passed "through" the Commonwealth. 43 P.S. § 1422. Plaintiff has alleged Defendant was paid by a public entity for the contractual rendering of services. This constitutes the provisions of money to pay for an activity, i.e. funding. Defendant thus constitutes a public body under § 1422.

Multiple Pennsylvania Superior Court decisions have supported this reading of the statute. They have repeatedly held that "the statutory definition of 'public body' for purposes of the Whistleblower Law includes, *inter alia*, private entities which receive funding 'in any amount by or through [the] Commonwealth.'" *Harrison v. Health Network Labs. Ltd. P'ship*, No. 365-EDA-2018, 2018 WL

6520982, at *6 n.4 (Pa. Super. Ct. Dec. 12, 2018). In *Denton v. Silver Streaming Nursing and Rehabilitation Center*, the Pennsylvania Superior Court held that the phrase "by *or through* Commonwealth," in the Pennsylvania Whistleblower Statute, made any private entities "that receive not only money appropriated *by* the Commonwealth, but also public money that passes *through* the Commonwealth" a public body. 739 A.2d 571, 576 (Pa. Super. Ct. 1999) (emphasis in original) (quoting 43 P.S. § 1422); *id.* ("[A] recipient of Medicaid funding is a 'public body' for purposes of the Whistleblower Law.").

Many federal district courts are skeptical of such an interpretation because the ordinary meaning of the phrase "public body" would not include a private entity receiving public funding. However, the PWA's explicit definition of public body supplants any other interpretation of the term:

> Notwithstanding the everyday meaning of "public body," this term was expressly defined by our legislature for purposes of the Whistleblower Law. . . . The statute plainly and unequivocally makes any body "funded in any amount by or through the Commonwealth … authority" a public body for purposes of the Whistleblower Law. Where the language of the statute is unambiguous on its face, we are bound to give effect to that language.

*Id.* (quoting *Riggio*, 711 A.2d at 500); *accord Hodges v. Rodriguez*, 645 A.2d 1340, 1348 (Pa. Super. Ct. 1994) ("Where a statute provides internal definitions, we are bound to construe the statute according to those definitions.").

9

The Pennsylvania Superior Court has twice cited *Denton* favorably for its interpretation of the Pennsylvania Whistleblower Statute, including after the statute was amended in 2014. *See Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 n.8 (Pa. Super. Ct. 2017); *Harrison v.* 2018 WL 6520982, at *6 n.4. Because Pennsylvania's intermediate appellate court decisions are strong indicators of how the Pennsylvania Supreme Court would rule—and because *Denton* is both consistent with the plain language of the statute and has been favorably cited by later Pennsylvania decisions—the court will follow *Denton*. *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010) (holding that courts interpreting state law should generally follow that state's intermediate appellate courts unless strong evidence suggests they should not); *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 409-10 (3d Cir. 2016) (same).

The court recognizes that federal district courts are nonetheless split on this issue, sometimes adopting *Denton* and other times rejecting it. *Contrast Mayer v. Boys & Girls Clubs of Phila. Inc.*, No. 10-cv-7574, 2011 WL 4467669, at *4-5 (E.D. Pa. Sept. 23, 2011) (holding, based on *Denton*, that a private entity contracting with a school district was covered by the Pennsylvania Whistleblower Law) with *Adams v. HCF Mgmt.*, No. 18-cv-47, 2018 WL 3388404, at *3-5 (W.D. Pa. July 12, 2018) (holding *Denton* was incorrectly decided). While the court is not bound by federal district court opinions, the *Adams* court is thoroughly reasoned and includes a review

of several federal and state opinions. The court has thus carefully reviewed it and will address its rationale, which can be divided into four arguments.

First, the *Adams* court states that the 2014 amendments to the statute rendered *Denton* inapplicable. The court disagrees. Two Superior Court cases favorably citing *Denton* post-date the 2014 amendment. Further, the key language relied upon in *Denton*—"funded by any amount by or through Commonwealth or political subdivision authority"—remains within the amended version of the statute. The 2014 amendment did alter the definition of "employer," but the *Adams* court goes too far in suggesting that the definitions of "employer" and "public body" are antagonistic to one another. *See Adams*, 2018 WL 3388404 at *3 ("HCF . . . appears to fall squarely within the current statute's definition of an 'employer' ***rather than*** a 'public body.'") (emphasis added).[5] The problem with this rationale is that the definition of "employer" includes a "public body." 43 P.S. § 1422. Thus, the 2014 amendments do not change the court's analysis of the statute's unaltered definition of "public body."

Second, the *Adams* court finds that the legislative history and debate concerning the 2014 amendments of the PWA support its interpretation of the

---

[5]   Even if those definitions were exclusive of one another, Plaintiff has alleged that Defendant is an LLC—a type of business organization that is not included in the apparently exhaustive list of business entities, other than public bodies, in the statute's definition of "employer." It thus does not fall within the definition of employers outside of public bodies.

statute. Under Pennsylvania law, however, the court must begin with the unambiguous language of the statute, only turning to the legislative history or legislature's interpretation of the statute if the court finds the language ambiguous. That court never found the statute ambiguous. Turning to the legislative history was thus incorrect. *Riggio*, 711 A.2d at 500.[6] The court today also finds the statute's wording unambiguous. The operative phrase in § 1422's definition of "public body" plainly includes any entity receiving funds coming from or passing through the Commonwealth. No reasonable people could disagree on this definition of public body nor has the court located any authority holding as much.

Third, the *Adams* court finds that *Denton* relied upon a misreading of the holding of *Riggio*, but another decision by the Western District of Pennsylvania held otherwise. *See Ellis v. Allegheny Specialty Practice Network*, No. 2:12-cv-404, 2013 WL 411477, at *3-4 (W.D. Pa. Feb. 1, 2013) ("In *Riggio*[], the *en banc* court determined that a private medical provider could be a 'public body' under the

---

[6] The early bedrock case rejecting *Denton* commits this same error, overtly disregarding the plain language of the statute in favor of its conjecture regarding legislative intent. *See Cohen v. Salick Health Care, Inc.*, 772 F. Supp. 1521, 1526-27 (E.D. Pa. 1991) ("Although there is no question that many doctors and other health care providers receive 'funds' for services rendered to Medicaid eligible patients, it was clearly not the intention of the Pennsylvania legislature to include them as funded public bodies under the Whistleblower Law."); *see also Adams*, 2018 WL 3388404 at *4 (including the same quote); *Zorek v. CVS Caremark Corp.*, No. 1:13-cv-1949, 2014 WL 12487695, at *7 (M.D. Pa. Apr. 16, 2014) (same); *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 408-09 (M.D. Pa. 2016) (holding *Cohen* justifies rejecting *Denton*). The *Cohen* court began with the legislative history because "no Pennsylvania appellate court has yet interpreted the Pennsylvania Whistleblower Law"—a statement which is no longer true and, even if it was, does not justify leaping over the statute's plain language. 772 F. Supp. at 1525.

12

Whistleblower Statute based upon its receipt of public money."). Moreover, while *Riggio* is factually distinguishable, it still rejected the underlying rationale of many of the cases rejecting *Denton* by holding that the plain language of the PWA must be followed over the more circuitous route of determining the legislature's intent employed by those courts. *See Riggio*, 711 A.2d at 500. *Riggio* is thus both consistent with *Denton* and inconsistent with the analysis of various federal district courts.

Fourth, the *Adams* court says "*Denton* appears to have been rejected by the majority of the courts that considered it," 2018 WL 3388404 at *4, but that court appears to have only reviewed federal district court decisions in coming to this conclusion. Because the Pennsylvania Superior Court itself has twice cited *Denton* favorably after the statute was amended, the court finds this argument unpersuasive. *See Am. Equip. Leasing v. McGee's Crane Rental, Inc.*, No. 01-CV-4783, 2002 WL 32341794, at *3 n.3 (E.D. Pa. Dec. 11, 2002) ("[F]ederal district court opinions are not to be given greater weight than state court decisions [when interpreting state law]."); *Pennell v. Wells Fargo Bank, N.A.*, 507 F. App'x 335, 338 (5th Cir. 2013) ("Federal district court cases are not authoritative statements of state law.").

Finally, outside of *Adams*, the court has identified one more argument raised by federal district courts rejecting *Denton*. Some courts have held that there must be a "difference between an entity that 'receives' public funds and one that is

13

'funded' by political subdivision authority." *Grim v. May Grant Assocs.*, No. 18-cv-2231, 2019 WL 35820, at *4 (E.D. Pa. Jan. 29, 2019); *accord Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 742-43 (E.D. Pa. 2011) (same). The court disagrees. It is true that the definition of employer includes "[a] public body or any of the following which receives money from a public body...," 43 P.S. § 1422, but there is nothing linguistically wrong with just reading this as a broad definition of employer including many entities, even if it overlaps with the definition of public body. This is consistent with the plain language of the statute and does not yield an absurd reading, even if the court found its consequences strange. *See Riggio*, 711 A.2d at 500; 1 Pa.C.S. § 1921(b) ("[T]he letter is not to be disregarded under the pretext of pursuing its spirit."). Moreover, to create the distinction these courts demand—confining "funding" to situations where the legislature directly allocates money to these entities—would render the words "*or through*" the Commonwealth meaningless. *See Denton*, 739 A.2d at 576 (emphasis in original); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Thus, this final argument also lacks sufficient merit to permit the court to disregard the plain language of the statute.

In short, Plaintiff has alleged a plausible claim under the PWA by alleging that she was terminated by a public body for reporting wrongdoing. Thus, at this time, the court will allow that claim to go forward.

### b. Plaintiff Has Alleged a Common Law Wrongful Discharge Claim Because Defendant Allegedly Terminated Her for Refusing to Commit a Crime.

Plaintiff alleges she was wrongfully discharged because Defendant terminated her in a manner that violates public policy. Pennsylvania is an at-will employment state. Generally, an employer can terminate an employee for any reason. There is, however, a common law restriction on an employer terminating an employee for a reason that violates public policy. As explained by the Third Circuit:

> Although the parameters of the public policy exception are not explicitly defined, the Pennsylvania courts generally have limited its application to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute.

*Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008) (citing *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111-12 (3d Cir. 2003)). Here, Plaintiff alleges that: (1) Defendant instructed her to engage in the practice of medicine despite lacking a medical license; and (2) that she was terminated in part due to her refusal to do so. Engaging in the unlicensed practice of medicine is a crime. *See Commonwealth v. Paolino*, 837 A.2d 1216, 1221 (Pa. Super. Ct. 2003) (affirming the criminal prosecution of a doctor in part for practicing medicine without a license). Defendant

does not address this theory in its motion to dismiss or reply brief. It is a sufficient basis for Plaintiff's count moving forward at this stage.

## IV. CONCLUSION

For the reasons outlined above, the court will deny the motion. An appropriate order will follow.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: November 17, 2020